CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 12 2017

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER LEE BAKER,**<br>    Plaintiff, | ) ) ) | Civil Action No. 7:16-cv-00271 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| **CLAY CORBIN, et al.,**<br>    Defendants. | ) ) ) | By:  Hon. Michael F. Urbanski<br>        United States District Judge |

Christopher Lee Baker, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming Superintendent James Whitley and Captain Clay Corbin of the Northwestern Regional Adult Detention Center ("Jail") as defendants. Defendants filed a motion for summary judgment, and Plaintiff responded, making this matter ripe for disposition. After reviewing the record, the court grants Defendants' motion for summary judgment.

I.

The verified complaint reads in pertinent part:

> I've been treated sadistically, cruelly, and unjustifiably mostly because I have medical neurological and psychological disorders. I've been placed in a cell w/ no running water, no bed, just a concrete slab to lay [sic] on for 16 hours a day[,] [m]onths at a time. I have severe back and hip pain as well as a separated shoulder from this wrongful treatment.

Plaintiff similarly complained about the lack of amenities on two grievance forms attached to the complaint. (Dkt. No. 2.) On the grievance filed on January 31, 2016, Plaintiff wrote:

> It is against the law to take a convict's bed and force him to lay on cold concrete 16 to 17 hours a day. This is considered a violation of my constitutional and amended rights.  It's cruel unusually sadistic unconstitution[al] unjustified punishment for a human being to endure. Either stop this mistreatment or I'll be forced to file a 1983 civil act for mental psychological and physical health damages that I now suffer from. Several months of this treatmen[t].

A lieutenant responded on February 10, 2016:

> The procedure of inmates housed in disciplinary segregation has not changed in a few years. The Dept. of Corrections has audited this facility and found that this area of the jail (D-seg) to be within acceptable standards of their policies and procedures. Disciplinary segregation is not meant for the enjoyment of the inmate. It is meant to deter bad behavior for the inmates. It is not sadistic or cruel and unusual punishment.

Plaintiff appealed the lieutenant's response, and Capt. Corbin deemed the grievance unfounded on February 12, 2016.

On the grievance form dated May 2, 2016, Plaintiff wrote:

> I have in the past and am now currently surveing [sic] sanctions which i[s] in a cold cell with no running water and nothing but a cold concrete bloc[k] to set [sic] on during a period of 16 hours a day for months at a time. I have committed acts in the past that I deserved sanctions. But for the most part I've been forced to suffer these cruel sadistic and unusual conditions and psychiatric disorders I have. I have been di[a]gnosed with the following: Tourette syndrome involuntary movements and vocalizations, conduct disorder, 'solitary aggressive type' A.D.H.D., personality disorder, Dysthymia, P.T.S.[D.], and several more. I have mental health evaluations that state[] the above. I am tired of being abused and mistreated cruel and sadistically for things I have no control over. Such as loud verbal out bursts, hitting a door with my hand involuntarily. I am fileing [sic] a long over do [sic] 1983 civil act for the mistreatment of a humanizing w/mental and medical disorders.

A lieutenant replied on May 12, 2016:

> The mistreatment you are describing in the above narrative has been grieved before. This was back in February of 2016[,] ... [which] was deemed unfounded by the Capt. of Security on 2-12-16. The Department of Corrections has reviewed this facility's Disciplinary Segregation Policy. They did not view this policy as cruel, sadistic, or inhumane. Disciplinary segregation was not made for an inmate's comfort level. If you are infraction free, your comfort level will be drastically different.

Plaintiff appealed the lieutenant's response, and Capt. Corbin deemed the grievance unfounded on May 12, 2016.

Capt. Corbin served as the "Captain of Security & Operations" between December 2013 and May 16, 2016. In that role, Capt. Corbin was responsible for maximum-custody and segregation classifications and the daily operations of those units. However, Capt. Corbin has not participated in Plaintiff's maximum-custody classification or had any responsibility for segregation housing since May 16, 2016.

## II.
### A.

Defendants argue that they are entitled to qualified immunity and summary judgment. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993); see, e.g., Pearson v. Callahan, 555 U.S. 223, 231 (2009).

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-

movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Notably, Plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

In response to Defendants' motion for summary judgment, Plaintiff filed a memorandum, copies of jail grievances, a letter Plaintiff purportedly sent to Capt. Corbin, and several "witness statements" purportedly signed by fellow inmates at the Jail.[1] Neither the memorandum nor the witnesses' statements constitute admissible evidence because they were not sworn before a notary and do not conform to 28 U.S.C. § 1746 for unsworn declarations. See Hill v Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 381-84 (M.D.N.C. 2012) (discussing the formalities and admissibility of statements and affidavits), aff'd, 523 F. App'x 213 (4th Cir. 2013).

---

[1] Plaintiff also filed a motion for video surveillance and a motion to compel defendants to file a prior Jail policy. The court denies the motions for several reasons. First, Plaintiff fails to certify that he sought the discovery from defendants before seeking a court order. See Fed. R. Civ. P. 37(a). Second, Plaintiff fails to explain how the video footage or policy is relevant, material, or probative of the facts of this action. See Fed. R. Civ. P. 26(b)(1). Lastly, Plaintiff has not certified that he cannot adequately oppose Defendants' motion absent the requested evidence. See Fed. R. Civ. P. 56(d).

4

"The liberal construction afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure." Reed v. Richards, No. 93-1190, 1994 U.S. App. LEXIS 14734, at *8, 1994 WL 259442, at *2-3 (7th Cir. June 13, 1994) (internal quotation marks omitted); see Fed. R. Civ. P. 7(a) (defining pleadings); see also Causey v. Balog, 162 F.3d 795, 803 n.4 (4th Cir. 1998) ("Because we cannot assess whether Causey had first hand knowledge of these facts or whether he is competent to testify to them, we cannot consider them in our review."); Gordon v. Watson, 622 F.2d 120, 122-23 (5th Cir. 1980) (reversing district court's reliance on pro se plaintiff's unsworn, unverified response in granting summary judgment but noting "had [the response] been sworn it would have raised a genuine issue [of] material fact"). Consequently, the unsworn memorandum and witnesses' unsworn purported statements are inadmissible for purposes of summary judgment.[2] See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) ("[A]n unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."); Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 80-81 (5th Cir. 1987) (considering only those statements in verified sworn pleading that reflected personal knowledge); see also Bernhardt v. Richardson-Merrell, Inc., 892 F.2d 440, 443 n.3 (5th Cir. 1990) (noting plaintiff's interrogatory answers regarding expert testimony were plainly not sufficient evidence for summary judgment). However, the court does consider the verified complaint and grievances as opposing the motion for summary judgment. See Williams, 952 F.2d at 823 (noting a verified complaint "is the

---

[2] Defendants challenge the authenticity of one of the inmate witnesses' statements and filed an affidavit from the purported author. The inmate's statement filed by Plaintiff was consistent with the general allegations in the complaint. The statement filed by defendants was from the same inmate but disclaiming both the content and signature in the statement filed by Plaintiff. However, the court does not need to resolve the dispute about the authenticity of the statement because it is not admissible evidence.

equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge").

**B.**

Defendants are entitled to qualified immunity and summary judgment because there is no genuine dispute of material fact as to whether Defendants exhibited deliberate indifference to a substantial risk of harm. The Eighth Amendment provides, in relevant part, that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. The Supreme Court has construed this clause to require prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). But the Supreme Court has noted that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To succeed on an Eighth Amendment claim that a prisoner was not provided humane conditions of confinement, the prisoner must prove "(1) that the deprivation of [a] basic human need was objectively sufficiently serious, and (2) that subjectively the officials act[ed] with a sufficiently culpable state of mind." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotations marks and emphasis omitted) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)); see Farmer, 511 U.S. at 834 (explaining that, to violate the Eighth Amendment, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'" (quoting Rhodes, 452 U.S. at 347)).

The verified complaint and grievances do not illustrate any defendant's deliberate indifference. The claims limited by the complaint are that Plaintiff has "been treated sadistically, cruelly, and unjustifiably" because:

> I have medical neurological and psychological disorders. I've been placed in a cell w/ no running water, no bed, just a concrete slab to lay on for 16 hours a day[,] [m]onths at a time. I have severe back and hip pain as well as a separated shoulder from this wrongful treatment.

Nothing in these three sentences addresses Defendants' deliberate indifference. Furthermore, Plaintiff did not discuss any hip pain or shoulder problem in a grievance reviewed by Capt. Corbin before this action commenced.[3] The record does not demonstrate any defendant's deliberate indifference. See Cloaninger, 555 F.3d at 336 (noting a response to a motion for summary judgment does not serve to amend or correct a complaint challenged by the motion for summary judgment).

The record also does not evince that Plaintiff was exposed to a substantial risk of harm. Although water is a basic life necessity, Plaintiff does not allege that he does not have access to water; rather, he complains that he does not have running water in the cell available to him at all times.[4] Plaintiff alleges in the verified complaint that does not have a mattress for sixteen hours a day, but he acknowledges the mattress is removed only between 7:00 a.m. and 11:00 p.m. Plaintiff fails to establish that a "comfortable" day bed is a basic human need.[5] See, e.g., Rhodes, 452 U.S. at 349 ("[T]he Constitution does not mandate comfortable prisons.");

---

[3] Note that Plaintiff does not allege that medical treatment is not available to him.

[4] Nevertheless, he later alleges that he had access to a bathroom where he bathes with water every day and showers. Plaintiff acknowledges that he is allowed out of his cell twice per week for thirty minutes and may choose to spend that time to shower, for recreation, or to use the law library.

[5] Thus, Plaintiff's allegation is dissimilar to Putney v. Likin, No. 14-6882, 2016 U.S. App. LEXIS 12951, 2016 WL 3755783 (4th Cir. 2016) (unpublished). In that case, the inmate was deprived of a mattress, but not blankets and pillows, all day and night for four months after being exonerated of disciplinary charges. Moreover, the defendants in that case were aware that a successful grievance appeal required them to give the inmate a mattress after he was exonerated.

Anderson v. Warden of Berks Cnty. Prison, 602 F. App'x 892, 894 (3rd Cir. 2015) ("We likewise agree with the District Court that Anderson was not subjected to cruel and unusual punishment when his mattress was removed during the day (and returned at night)."); see also Coats v. Farmer, No. 4:12-cv-1973-TMP, 2013 U.S. Dist. LEXIS 187252, at *6-9, 2014 WL 1612700, at *3 (N.D. Ala. Apr. 22, 2014); Gannaway v. Berks Cnty. Prison, No. 09-4501, 2011 U.S. Dist. LEXIS 35047, at *18-20, 2011 WL 1196905, at *6 (E.D. Pa. Mar. 31, 2011); Wiley v. Glover, 2008 U.S. Dist. LEXIS 87185, *58-61, 2008 WL 4629924, *18 (M.D. Ala. Sept. 3, 2008) (Walker, M.J.), adopted, 2009 U.S. Dist. LEXIS, 2009 WL 67657 (M.D. Ala. Jan. 9, 2009); Finney v. Hutto, 410 F. Supp. 251, 277-78 (E.D. Ark. 1976). Plaintiff has a mattress eight hours each night for sleeping, and he fails to explain how he is "forced" to lie on concrete during the day.

Moreover, Defendants' testimonies are uncontroverted, and the uncontroverted facts do not illustrate deliberate indifference to a substantial risk of harm. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (recognizing a party's failure to respond to a summary judgment motion leaves facts uncontroverted and that a court accepts as true the uncontroverted facts to resolve the motion for summary judgment). The uncontroverted facts reflect that Plaintiff was committed to the Jail on November 9, 2014, and classified as "maximum custody" because of the nature of his charges, including first degree murder; past history of violence; maximum-custody classification during his previous incarceration; his violent threats during booking on November 9, 2014; and a Classification Assessment score of 22 points.[6] Defendants

---

[6] "Maximum custody" at the Jail does not equate to disciplinary segregation. The Jail defines maximum custody as:
> (Classification Score 21 or greater). An inmate requiring special custodial supervision because of a high probability of attempted escape and/or violent or other dangerous

8

believe that Plaintiff's behaviors place the safety of staff and other inmates at risk. These behaviors include making shanks and weapons, threatening to escape, and threatening and attempting to kill or injure himself, inmates, jail staff, and police. Plaintiff repeatedly has been assigned to disciplinary segregation due to breaking institutional rules prohibiting such behaviors.[7]

The uncontroverted facts also reflect that the conditions of disciplinary segregation are set by Jail policy and have been approved by the Virginia Department of Corrections. Jail policy permits these inmates seventy-five minutes of leisure time out of the cell every day "for shower[,] recreation[,] hygiene[,] etc." Inmates in segregation have access to the medical department, including mental health staff, and administrative remedies. Inmates in segregation receive clothing, linens, a blanket, a hygiene kit, and a writing kit. At all times, these inmates are permitted one soft-cover religious book, a bar of Jail-issued soap, one roll of toilet paper, one wash cloth, one Jail-issued cup, and legal material. These inmates have access to a sink and toilet at all times. Although mattresses, allowable personal property, and linens are removed from segregation cells during the day, these items are returned to inmates in the evening.

The uncontroverted facts further reflect that the Jail's medical and mental health staff has examined Plaintiff repeatedly. Nonetheless, at no time did a physician or other medical

---

behavior that presents a serious threat of bodily harm to staff, other inmates or other persons. Examples of such behaviors would be such incidents as attacking / assaulting someone with the intent to cause serious injury or death; a history of escape involving the use of force; or someone who has been confirmed as planning to escape. (1) Maximum Custody is NOT punitive. Inmates assigned to Maximum Custody are afforded basically the same privileges as other inmates (i.e. TV; canteen; recreation; visitation, etc.). . . .

In contrast, the purpose of disciplinary segregation is to deter future negative behavior and to separate an inmate from other inmates completely and from staff as much as possible to avoid injury and more infractions.

[7] Despite his allegation to the contrary, the record establishes that Plaintiff has not been housed in disciplinary segregation the entire time he has been at the Jail; he was in disciplinary segregation for approximately 114 days in 2015 and 186 days in 2016.

professional communicate to Defendants that Plaintiff needed a mattress in his cell during the day for medical reasons or that Plaintiff needed to be removed from disciplinary segregation or have any restriction lifted for mental health reasons. Superintendent Whitley did not have any personal involvement with Plaintiff's placement in disciplinary segregation, nor did he have contemporaneous knowledge of Plaintiff's complaints about his conditions of confinement in segregation. Superintendent Whitley cannot be held liable under a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978).

Even after viewing the record, including the uncontroverted facts, in a light most favorable to Plaintiff, no genuine dispute of material fact exists to demonstrate a defendant's deliberate indifference to a substantial risk of harm. Accordingly, Defendants are entitled to qualified immunity and summary judgment.

### III.

For the foregoing reasons, the court grants Defendants' motion for summary judgment.

ENTER: This 11th day of April, 2017.

/s/ Michael F. Urbanski
United States District Judge